Speak, J.
It will be noted that the allegation against the Times-Star respecting the use which was to be made of the amount contributed is that twenty-four cents of the fifty cents paid was for a subscription to the newspaper, and that the remaining twenty-six cents were to go into a fund which, along with similar payments from others, was to constitute the fund from which the prizes were to be paid, whereas the prizes by the other companies were to be paid from their own funds, and no subscription to either newspaper was made. But it is believed that there is no essential difference in the questions of law presented by the several petitions. Hence it has *146 not been found important to incorporate all of them in full in the record here.
To maintain his case the plaintiff must establish that the scheme shown by the petition involves a lottery, or a gaming contract such as is made unlawful either by the statutes of Ohio or at common law, and that he is entitled to relief by a court of equity such as is demanded by his petition.
1. Is the project a lottery, or an unlawful gaming scheme of any kind 1 Under the head of “ Lotteries ’ ’ our statutes, sections 6929, 6930 and 6931, interdict the publishing in any way an account of any lottery or scheme of chance of any kind or description, stating when or where the same is to be drawn, or the prizes therein, or in any way giving publicity to such lottery or scheme of chance; the vending, or in any way disposing of any ticket, order or device of any kind, for or representing any number . of shares, or any interest in any lottery or scheme of chance of any kind or description; the carrying on or promoting any scheme of chance of any kind or description by whatever name, style or title the same may be denominated or known. Under the head of “Gaming and Betting,” section 6938 declares unlawful the making of any bet or wager for any sum of money, or other property of any value, and the following section declares unlawful the making of any bet or wager on the result of any election held under the laws of this state, etc. Giving further effect to the spirit of these provisions, the statute (sections 4269 to 4271) declares that all promises, agreements, etc., the whole or any part of the consideration of which is money or any other valuable thing, won or lost, laid, staked, or betted, *147 at or upon any game of any kind, or under any denomination or name whatsoever, or upon any wager, shall he absolutely void; money, or other thing of value, may he recovered hack from the winner hy action commenced within six months, and one who expends any money, or thing of value, to procure any chance, or any interest therein, on account of any scheme of chance, may sue for and recover from the person receiving such money, etc.
Many definitions of the word lottery are found in the hooks. An often quoted definition is given by Folger, J., in Hull v. Ruggles, 56 N. Y., 424, which is: “Where a pecuniary consideration is paid, and it is determined hy lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery.” “A sort of gaming contract by which, for a valuable consideration, one may, by favor of the lot, obtain a prize of a value superior to the amount or value of that which he risks.” American Cyclo. “A lottery,” says the supreme court of Michigan in The People v. Elliott, 74 Mich., 264, “is a scheme by which a result is reached by some action or means taken, and in which result man’s choice or will has no part, nor can human reason, foresight, sagacity, or design enable him to know or determine such result until the same has been accomplished.”
However, it should not be concluded that the term “lot or chance” implies that if any element of certainty or skill enters into the scheme it therefore relieves it of its character as a lottery, or scheme of chance. Chance is something that befalls; the result of unknown or uncertain forces or conditions. An intelligent definition is given in 6 Cyc., 890, thus: *148 “Possibility, hazard, risk,'or the result or issue of uncertain and unknown conditions or forces, neither understandingly brought about by one’s act, nor pre-estimated by one’s understanding.” This element of chance is not at all incompatible with the presence of an element of calculation, or even certainty. That principle is illustrated in Horner v. United States, 147 U. S., 449, where the court say: “Although by the bonds in question, Austria attempted to obtain a loan of money, she also undertook to assist her credit by an appeal to the cupidity of those who had money, and offered to every holder of a bond a chance of obtaining a prize dependent upon lot or chance, the element of certainty going hand in hand with the element of lot or chance, but the former not destroying the existence or effect of the latter.” It is easily within bounds to conclude that if the dominating, determining element is one of chance, that element gives character to the whole scheme.
Our statute as to gaming and betting has been cited. A bet is: “An agreement between two or more, that a sum of money, or some valuable thing, in contributing which all agreeing take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain; the mutual agreement and tender of a gift of something valuable, which is to belong to the one or the other of the contracting parties, according to the result of the trial of chance or skill, or both combined; a wager; to put to hazard a sum ascertained upon a future happening of some event then uncertain; the thing or sum wagered. ’ ’ 5 Cye., 684. A wager is: “A bet; a contract by which two *149 parties or more agree that a certain snm of money, or other thing, shall be paid or delivered to one of them on the happening, or not happening of an uncertain event. A contract upon a contingency by which one may lose but cannot gain, or the other must gain but cannot lose, is a wager. * # * A wager is something hazarded on the issue of some uncertain event; a bet is a wager, although a wager is not necessarily a bet.” 2 Bouv., 793.
With the provisions of statute and these rules and definitions before us, what conclusion follows ? The petition in the first-named case shows that the plaintiff paid fifty cents for a subscription to a newspaper and for the privilege of guessing or estimating the total number of votes that would be cast for the secretary of state of .Ohio, at the coming election, November 4, 1902, the subscription to cost twenty-four cents and the guess to cost twenty-six cents, and in case his guess should be superior to all those coming within the terms of the offer extended to all, or equal to those coming within a lower class with the plaintiff, he was to receive a money prize, to be paid to him by the newspaper company, varying in amount from one-tenth of the whole sum contributed by the guessers, to a sum equal to one-fifth of one-eightieth of the whole sum so contributed, all depending upon the nearness of his guess to the actual number of votes cast for the officer named and the nearness of the other guesses to that total vote. It was the opinion of the learned judge who heard the case at the special term that these guessing contests were not within the condemnation of the., statutes of Ohio against lotteries, gambling, wagering, or betting. (13 Dec., 235.) In a later case, that of *150 Hobing v. The Enquirer Company, heard in the common pleas of Hamilton county, wherein the plaintiff, a guesser, sought to recover judgment upon an allegation that he had made the correct estimate and was therefore entitled to the prize of $10,000.00, that court (Littleford, J.) held that the alleged contract was a wager between the plaintiff and defendant, was in violation of section 4269, Revised Statutes, and that, while plaintiff might, under this statute, recover back his fifty cents in a proper court, yet, the common pleas not having jurisdiction of the amount, the petition was dismissed. By the opinion in this later ease (2 N. P. N. S., 205), we learn that, although the general term affirmed the judgment of the special term, two of the judges (one of them being the learned judge of. the common pleas at the time sitting as a member of the general term) did not concur in the holding of the special term respecting the character of the contract.'
Which, if either, of these views is correct? It would seem not difficult to reach the conclusion that the project was, in essence and reality, a scheme of chance. The term guess itself imports uncertainty. It is at best a conjecture, a random judgment, and a guesser is one who gives an opinion without means of knowing. It is true that one acquainted with the results of the elections of the state in previous years and educated in politics would have some advantages over one ignorant in those respects, yet, it must be apparent even to a casual observer, that the result would depend upon so many uncertain and unascertainable causes, that the estimate of the most learned would be after all nothing more than a random and *151 undecisive judgment. In the sense above indicated there is an element of skill, possibly certainty, involved, but it is clear that the controlling, predominating element is mere chance. It was a chance as to what the total vote would be; it was equally a chance as to what the guesses of the other guessers would be. Whether or not the transaction includes the quality of a bet is not so certain. Its determination is not essential to a proper disposition of this case. We incline to think, however, that it does, but are unable to agree with the conclusion that the bet is between the plaintiff and the defendant. A bet implies that what one party gains the other loses, and vice versa. The defendant in the present case loses nothing whatever the outcome; nor does it gain whatever the outcome. It is a matter of indifference to it who wins the prizes, whether this plaintiff or any of the other contributors. Not so with the contributors between themselves. If A. should win the first prize, for instance, B. could not. If the transaction were a bet, therefore, it would seem to be between this plaintiff and all the other guessers, and in this view the defendant would be a mere stakeholder. We are not concerned to inquire what the law of other jurisdictions may be and hence do not take the pains to discuss, or even cite, the mass of authorities cited by counsel. They will be found in the reporter’s introduction, to which any curious inquirer, should there be such, is referred. It suffices that, under the laws of Ohio, these guessing contests were, all of them, unlawful. Not that there is any belief or claim that the several defendants would, either of them, fail to conduct the ascertainment of the successful guessers and the awarding *152 and payment of the prizes with entire impartiality and fairness, but the schemes themselves must be held to be within the condemnation of our statute. The vice of the project lies in the payment of money for the opportunity to win more money by a scheme of chance. It is not simply the winning of prizes that the statute seeks to inhibit. There may be such contests in which there is no element of gambling. If the contestant, or player, risk nothing, as where the prizes are offered in school by the teacher to scholars for the best essay, or in society by the host or hostess as an inducement to guests to attend social gatherings and indulge in games innocent in themselves, the winners to receive prizes as matter of grace and favor, and as reward for skill, it is not considered that the function embraces any gambling element, whatever other objectionable features, if any, are present; but, where the players make up by payment of money, or other thing of value, a purse which affords the prizes, as in the ordinary raffle, the game is a gambling game, whether skill enters into the result or not. All highly civilized peoples recognize the evils to society arising from the encouragement of the gambling spirit, and it is for the purpose of discouraging this vice and preventing the spread of it, that laws are passed in other states like the Ohio statutes to punish and prohibit. Such laws are and should be interpreted and enforced by our courts in a way calculated to secure the object sought. A familiar case is that of Hooker v. DePalos, 28 Ohio St., 251, condemning and holding unlawful a scheme known as a “gift enterprise.” This is an instructive case, and the vice which is *153 condemned by the court is the same which inheres in the scheme present in the case at bar.
2. Is the plaintiff entitled to relief in a court of equity?
He seeks to invoke the jurisdiction of the equity court and asks an injunction and a receiver, on the ground that he stands in a representative capacity, having the right to represent and appear for all the other persons who have delivered money to the defendant under the same terms and conditions under which plaintiff delivered his .fifty cents; that such persons are numerous; that each and all having a general interest in and common right to the money or fund thereby accumulated, the fund equitably belongs to all who have made guesses and paid money to the defendant, and hence plaintiff has the right to maintain a suit in equity for the benefit of all. Is his position tenable? This contest we have found to be an illegal enterprise. It is apparent that the inducement to the guessers was not to subscribe for a newspaper, but to get a prize. They, therefore, are each and every one of them particeps crvmmis in an illegal transaction. The general rule applicable to such a situation is that the law will aid neither party to enforce the contract while executory, nor, where executed, will it aid either party to place himself in statu quo by a rescission, but will, in both cases, leave the parties where it finds them. This well-established rule has been varied by changes in our statute, as we have seen, which allows money won by gaming or betting to be. recovered at law by the loser. But these are exceptions, and are to he confined to the particular cases, and relief to be obtained by the particular methods indicated by the *154 statute. While this is true it is also true, independent of the statute, that, so long as the illegal acts remain wholly unexecuted, the party parting with his money may repent, abandon his contract, and recover back the money paid, the law’s aim being to prevent wrongdoing by encouraging such repentance and abandonment. Roll v. Raguet, 4 Ohio, 400; Cowles v. Raguet, 14 Ohio, 38; Thomas v. Cronise, 16 Ohio, 54; Hooker v. DePalos, supra; Cooper v. Rowley, 29 Ohio St., 547; Kahn v. Walton, 46 Ohio St., 195. The plaintiff claims to have thus repented. Well and good so far as it goes. But how about the other guessers? Have they repented? Did they, when this suit was commenced, want their alleged contract rescinded? The petition shows that they were very numerous; that their names are unknown to the plaintiff, and it is impracticable to bring them before the court. This is a conclusive showing, it appears to us, that he is wholly without information respecting a condition essential to the maintenance of a joint suit in equity. Indeed the presumptions are against the plaintiff’s claim. These people had paid a small amount of money for a chance to receive a much larger amount, and they would ,be presumed to remain of the same mind until the contrary is shown. The case is wholly dissimilar, in its presumptions, from one to which it is sought to be likened, viz.: where a property owner seeks to avoid payment of an alleged illegal assessment. In such case it might naturally be presumed that the property owners would all be of the same mind in an endeavor to avoid an injustice.
The rule is uniform that, in order to maintain a suit by one for the benefit of himself and others, there *155 must be community of interest as well as a right of recovery by reason of the same essential facts. Armstrong v. Treas., 10 Ohio, 235; Ohio v. Ellis, same volume, 456; Trustees v. Thomas, 51 Ohio St., 285, 295; Duncan v. Willis, same volume, 433. These elements are lacking in the case made by the plaintiff’s petition. In passing, also, we should take note of the fact that there would have followed as a necessity from the sustaining of plaintiff’s contention, the ascertainment by the court through its receivers of the names and addresses of the four hundred thousand contributors, and the distribution to each of his half-dollar, reduced by his proportion of the probable fees, allowances and costs, and when this is considered it must be apparent that the magnitude and difficulties of the task would be immeasurably greater than any good which the painful working out of the remedy would bring about.
The superior court properly sustained the demurrer to the petition as an appeal to the equity side of the court, and, having no jurisdiction of the law case respecting the amount, it properly dismissed the case. Its judgment is, therefore,

Affirmed.

Davis, C. J., Shauck, Price, Crew and Summers, JJ., concur.